# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

No. 17 mj 02276-JG

IN RE:  SEALED COMPLAINT
_____/

## CRIMINAL COVER SHEET

1.     Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2.     Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____

BENJAMIN J. WIDLANSKI
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5501885
99 N. E. 4th Street
Miami, Florida   33132-2111
TEL (305) 961-9342
FAX (305) 530-7976

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 17mj 02276-JG |
| DANIEL JOHN PYE, | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   10/27/08; 10/5/09; 5/14/11; 11/8/11   in the county of   Miami-Dade and Broward   in the

Southern   District of   Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2423(b) | Travel in Foreign Commerce with the Purpose of Engaging in Illicit Sexual Conduct with a Minor, in violation of Title 18, United States Code, Section 2423 (b) |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Emily A. Shoupe, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date:   2-24-2017

_Judge's signature_

City and state:   Miami, FL

JONATHAN GOODMAN, U.S. Magistrate Judge
_Printed name and title_

## **AFFIDAVIT**

I, Emily A. Shoupe, a Special Agent of Homeland Security Investigations ("HSI"), Special Agent in Charge Office, Miami, Florida, being duly sworn, depose and state as follows:

1.      I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since May of 2009.  As such, I am responsible for investigations of offenses under Titles 8, 18, 19, and 21 of the United States Code.  As part of my duties, I investigate crimes involving the sexual exploitation of minors.  I have received training in the investigation of child pornography and child exploitation offenses, including training on proper investigative techniques, such as the application and execution of arrest and search warrants.  I have participated in investigations involving pedophiles, preferential child molesters, and persons who collect and/or distribute child pornography, along with the importation and distribution of materials relating to the sexual exploitation of children.

2.      This affidavit is submitted in support of a criminal complaint charging Daniel John PYE (hereinafter, "PYE"), with, on or about October 27, 2008, October 5, 2009, May 14, 2011, and November 8, 2011, traveling in foreign commerce, that is, from Miami International Airport in the Southern District of Florida to Port-au-Prince, Haiti, with the purpose of engaging in illicit sexual conduct with a minor, in violation of Title 18, United States Code, Section 2423(b).

3.      The facts in this affidavit come from my personal observations, my training and experience, information obtained from other law enforcement officers, examination of documents and records, and discussions with civilian witnesses.  This affidavit is intended to show merely that there is sufficient probable cause in support of the attached criminal complaint and, as such, does not set forth all of the information known by myself and other law enforcement officers in this investigation.

4.      On April 14, 2015, an individual contacted the national HSI tip line, and stated that an individual named "John Daniel Pye" had sexually abused a minor female while working at an orphanage in Haiti from 2008 through 2012.   In late May of 2015, this information was forwarded to HSI's Miami Office.

5.      Through an examination of travel records and law enforcement databases, "John Daniel Pye" was identified as PYE, an American citizen, born in 1981.   Through database queries, law enforcement identified over 40 separate flights that PYE took from commercial airports, including both Miami International Airport and Fort Lauderdale International Airport, in the Southern District of Florida, to Haiti.   These flights occurred between July of 2004 and September of 2013.

6.      On June 1, 2015, your affiant spoke with the tip-line caller.   The caller stated that she had received information about PYE from an American married couple – Witness 1 and Witness 2 – who had previously worked with PYE as missionaries at an orphanage in Haiti.   The tip-line caller informed your affiant that the couple had told her that three separate females in Haiti had alleged that they were sexually abused as minors by PYE.   Law enforcement identified Witness 1 and Witness 2, made contact with them, and interviewed them regarding PYE's activities in Haiti.

7.      Witness 1 and Witness 2 are United States citizens who have worked in multiple orphanages in Haiti.   According to Witness 1 and Witness 2, in approximately 2005 or 2006, PYE began running an orphanage in Jacmel, Haiti.   The orphanage was affiliated with an organization called "Haitian Children's Home" (hereinafter, "HCH").   PYE took over the orphanage from a

Canadian male, referred to herein as Witness 3.[1]  In August of 2006, Witness 1 and Witness 2 began working with PYE at HCH.

8.      In 2009, Witness 1 and Witness 2 moved to Jacmel, Haiti.  A financial conflict arose between the couple and PYE, and PYE was ultimately fired by the board of HCH.  PYE continued running the orphanage in Jacmel with alternative funding.

9.      Following PYE's dismissal from HCH, Witness 1 and Witness 2 had little interaction with PYE or the children at PYE's orphanage.  According to Witness 1 and Witness 2, in approximately 2012, PYE was imprisoned in Haiti, for reasons unknown to your affiant, at which point some of the children from the orphanage reconnected with Witness 1 and Witness 2. In 2013, PYE left Haiti and returned to the United States for an extended period of time, apparently having ceased any long-term, within-country work in Haiti.

10.     In April of 2015, Witness 1 was talking about PYE with an adult who had lived in PYE's orphanage as a child, Witness 4.  Witness 4 told Witness 1 that PYE had sexually abused a minor Haitian female, referred to herein as Minor Victim 1.

11.     After learning about this abuse from Witness 4, Witness 1 spoke with Minor Victim 1 and her mother.[2]  Minor Victim 1 informed Witness 1 that she had been sexually abused by PYE and that PYE had also molested two other females while they were children living at the orphanage, Minor Victim 2 and Minor Victim 3.  Minor Victim 1's mother, who worked at the orphanage, stated that she confronted PYE and that PYE had dismissed her from her employment

---

[1]      Law enforcement located and interviewed Witness 3 telephonically.  He advised that he had transferred the operation of the orphanage to PYE in 2006.

[2]      During the course of this investigation, I have learned that orphanages in Haiti do not, strictly speaking, house only orphans.  Frequently, Haitian orphanages run by missionary groups or aid organizations will provide housing, food, education and vocational training for under-privileged children, regardless of whether or not their parents are living.  Oftentimes, children will reside at the orphanages well-into their adulthood, assisting in the upbringing of younger children.

at the orphanage while simultaneously making monetary payments to her.  Minor Victim 1's mother also said that a gynecological examination had been done on Minor Victim 1.  Witness 1 later informed law enforcement that the doctor who performed this gynecological exam was named Christian Martinez, and that he worked in Jacmel.

12.     Witness 1 and Witness 2 identified a number of other individuals who had contact with PYE in Haiti and the United States, and law enforcement began to interview them.  One of these individuals, Witness 5, is a United States citizen currently residing in North Carolina. Witness 5 informed law enforcement that he/she originally met PYE in approximately 2007, while Witness 5 and other members of Witness 5's church were on a missionary trip to Haiti.  In the summer of 2009, Witness 5 and PYE both attended a religious conference in Kentucky.  While at the conference, Witness 5 shared a room for one week with PYE.

13.     Witness 5 stated that while at the conference in Kentucky, Witness 5 and PYE began to discuss marital problems that PYE was experiencing.  According to Witness 5, PYE stated words to the effect of: "It's made things worse because I've had an inappropriate relationship with one of the kids."  PYE mentioned the child's first name, and Witness 5 recognized the name as one of the children who resided at the orphanage in Haiti.[3]  When Witness 5 expressed concern at PYE's statement, PYE immediately told Witness 5 that he meant only that he played with the child to avoid spending time with his wife.  After thinking more about the conversation, Witness 5 contacted PYE by phone a few weeks later to ask him further questions about the "inappropriate" relationship.  PYE immediately became defensive and stated words to the effect of: "It was my

---

[3]     Law enforcement subsequently identified this child, Minor Victim 5, who still resides at the orphanage and in 2009 was approximately 12 years old.  As discussed below, Minor Victim 5 has not been interviewed by law enforcement.

4

bad to have trusted you."

14.    Law enforcement also spoke with Witness 6, a United States citizen currently residing in Pennsylvania.   He occasionally worked with PYE in Haiti over the course of approximately five years during the 2000s.   During a seven-month period in either 2008 or 2009, Witness 6 worked for PYE at the orphanage assisting with maintenance and transportation.

15.    Witness 6 informed law enforcement that he and PYE took children from the orphanage to the beach and tried to teach them to float in the water.   Witness 6 recalled that, on one occasion, PYE was teaching one of the nannies' daughters to float, but could not recall the specific girl, although he did state that the girl was approximately 11 or 12 years old.   Witness 6 recalled seeing PYE touching the girl's pubic area, posterior, and breast area, and believed that it was inappropriate.

16.    Law enforcement traveled to Haiti in 2015 to speak with some of the victims and witnesses identified during the course of the investigation.   A forensic interviewer spoke with Minor Victim 1, who was twelve (12) years old at the time of the interview and still resides in Haiti. Minor Victim 1 told the forensic interviewer that when she was approximately six- or seven-years old, and living at PYE's orphanage, PYE began to molest her.   PYE would insert his finger inside Minor Victim 1's vagina, and also had Minor Victim 1 touch his penis.   This conduct continued for a period of years, until Minor Victim 1 was approximately eight to ten years old.

17.    In a follow-up interview that took place on a subsequent trip to Haiti, law enforcement again spoke with Minor Victim 1, who confirmed the statements she had previously made to the HSI forensic interviewer, as described above.   Minor Victim 1 additionally stated that PYE had forced her to perform oral sex on him on multiple occasions.   She also stated that she had been brought to the hospital because PYE had put his fingers inside her vagina, and that her mother

5

was fired after this incident.  She said PYE had sexually abused her every day, whether his wife was home or not, beginning in 2008, when she was approximately six (6) years old, and ending after her visit to the doctor, in 2011.

18.     Also in 2015, the forensic interviewer spoke with Minor Victim 2, who was eighteen (18) years old at the time of the interview and still resides in Haiti.  Minor Victim 2 informed the forensic interviewer that she recalled one occasion when PYE pushed her swimsuit aside and inserted his finger into her vagina.  Minor Victim 2 did not recall exactly when this incident occurred, but stated that it happened when she was under the age of 12, prior to approximately 2009.  Minor Victim 2 also recalled observing Minor Victim 1 perform oral sex on PYE when Minor Victim 1 was approximately seven or eight years old.  Minor Victim 2 told the forensic examiner that Minor Victim 1's mother overheard Minor Victim 2 discussing the sexual activity between PYE and Minor Victim 1, and that Minor Victim 1's mother confronted PYE; after the confrontation, Minor Victim 1 was taken to the doctor.  Minor Victim 2 also informed the forensic examiner that she had observed PYE having sex with Minor Victim 4 when Minor Victim 4 was approximately 12 to 14 years of age.

19.     In a follow-up interview that took place on the subsequent trip, law enforcement again spoke with Minor Victim 2.  Minor Victim 2 confirmed statements she had made to the HSI forensic interviewer in August of 2015 regarding how PYE would touch her vagina when they were at the beach swimming.  Minor Victim 2 additionally stated that on multiple occasions, both at the beach and within the orphanage, PYE touched her breasts and vagina.  This occurred when she was approximately eight to nine years old, in either 2004 to 2005.

20.     During the same 2015 trip, the forensic interviewer spoke with Witness 4, who grew up in the orphanage and lived there throughout the time that PYE ran the orphanage, and had

originally provided the information regarding Minor Victim 1 to Witness 1. Witness 4 described an incident in which PYE believed that everyone was at church, but Witness 4 had in fact remained at the orphanage, and he witnessed Minor Victim 1 performing oral sex on PYE, when Minor Victim 1 was approximately seven or eight years old. Based on Minor Victim 1's age, this would have been in either 2009 or 2010.

21.     As part of this investigation, law enforcement obtained travel records from Customs and Border Protection related to PYE's travel. PYE's name and date of birth were identified on flight manifests for numerous flights leaving from Miami International Airport and Fort Lauderdale International Airport, both in the Southern District of Florida, and arriving in Port-au-Prince, Haiti. Specifically, on October 27, 2008, October 5, 2009, May 14, 2011, and November 8, 2011, PYE departed from Miami International Airport on route to Port-au-Prince.

22.     Based on information obtained during the investigation, law enforcement sought and received authorization to search and seize the contents of the American Online email account DPYE316@aol.com, which was identified as PYE's email account. As a result of that search warrant, American Online provided, among other information, the following results [all *sic*]:

   a.   An email dated January 16, 2012, from PYE, to an identified email address, titled "[Minor Victim 1's mother] situation." The email stated, in part, "[Minor Victim 1's mother] was fired on January 10, 2012, for lack of respect, spreading lies, gossip and acting harshly towards the children in our home. It started back in November when [PYE's wife] and I were in the US, the kids talking about [Minor Victim 1] in a 'relationship' with our male staff. It escalated and changed several times since then, went to the extreme that they were having sex. This made [Minor Victim 1's mother] VERY angry."

7

b.  Email dated May 3, 2012, from PYE to four identified email addresses, titled "November 2011 Expense Report."  This email included a summary of expenses from November 2011, including one row that stated, "11/15/2011 Dr. Martinez" "$25" (USD) "Doctor visit for [Minor Victim 1]."

23.    Based on information obtained during the investigation, law enforcement sought and received authorization to search and seize the contents of the Facebook account Danny.Pye.33, which was identified as PYE's Facebook account.  As a result of that search warrant, Facebook provided, among other information, the following content [all *sic*]:

a.  Related to the October 27, 2008, travel date:

i.  October 27, 2008: A post from an identified Facebook user on the "wall" of PYE, which stated, "Great to see you and [PYE's wife] today. Travel safely and I'm looking forward to seeing HCH grow…it was really cool to hear your update today."

ii.  October 28, 2008: A post from an identified Facebook user on the "wall" of PYE, which stated, "Hope the trip home was uneventful.  Great seeing you again and meeting [PYE's wife].  Keep me posted if you need anything."

iii.  November 8, 2008: A photo posted with the caption "Hanging out at HCH" that appeared to be a photograph of PYE with Haitian children. Additionally, another photo was posted on that same date, with the caption "Pool party with the Haitian Children's Home" that depicted what appeared to PYE with Haitian children in a pool.

b.  Related to the October 5, 2009, travel date:

i.  September 19, 2009: A private message from PYE to an identified

8

Facebook user, which stated, "We are well. We are heading to the US today actually.  Attending a conference in CO. then to N.C. for meetings. Fun Danny."

ii.  September 23, 2009: A private message from PYE to an identified Facebook user, which stated, in part, "[Identified Facebook user], we are doing well. [PYE's wife], [PYE's minor child], and I are in CO at a MTI retreat. I won't be returning to Haiti until Oct. 5th."

iii.  November 3, 2009: PYE posted two "status updates" which stated, "The mitibishi is running!!" and, "now off to eat Speggetti with the kids, one of the best times of the week."

iv.  November 5, 2009: PYE posted a "status update" which stated, in part, "It is amazing how much more you appreciate your employees when they are not around…[Name redacted], I miss you, and the day is just beginning…Looks like I am on driving the kids to school today."

c.  Related to the November 8, 2011, travel date:

i.  October 17, 2011: PYE posted a "status update" which stated, "Really enjoyed sharing at Palmetto First Baptist this morning.  Had a great family dinner with [PYE's wife]'s dad, sister, and family.  Sad to say our goodbyes, but excited to getting closer to the date to head to Haiti."

ii.  November 8: 2011: PYE posted the following "status updates" in order, beginning with the earliest post:

1.  "I sang happy birthday to my [Name redacted] tonight…I am packed!! And ready to head home (Haiti)!! [Name redacted] is

9

taking me to the airport, and I will be home hopefully right before the kids get home from school!!"

2. "GOING HOME!!!"

3. "boarding…"

iii. November 9: 2011: PYE posted the following "status updates," which stated, in part:

1. "So during the boarding in Miami to return to Haiti. I watch President Preval walk up." "He sat in first class on the commercial flight."

2. "It is so good to be home. Great night, for the most part. [Name redacted] and [Minor Victim 5] had a motorcycle accident on the way home from [Minor Victim 5]'s night school. I immediately rushed over." "I spent the entire night just sitting hearing stories of Haiti life for the past few months, and telling road trip stories…a great night!!"

24.      As a result of this investigation, a grand jury subpoena was served on American Airlines to obtain flight travel records for PYE on American Airlines flights. American Airlines provided a response, stating that they did not have records pre-dating 2011; however, American Airlines did provide, among numerous other travel dates, the below listed flights that PYE had reserved and also boarded:

a. May 14, 2011 – American Airlines Flight 687, from Tampa to Miami; American Airlines Flight 809, from Miami to Port-au-Prince.

b. November 8, 2011 – American Airlines Flight 1236, from Tampa to Miami;

American Airlines Flight 1291, from Miami to Port-au-Prince.

25.     In addition, during the course of this investigation, law enforcement has interviewed four individuals who reside in Florida, all currently in their twenties, who knew PYE during PYE's teenage years.  These four individuals, Minor Victim 8, Minor Victim 9, Minor Victim 10, and Minor Victim 11, informed law enforcement that, when they were all between five and seven years of age, they were victims of sexual assault by PYE during the approximate time frame of 1996 through 1999.

26.     Based upon these facts, I submit that there is probable cause to believe that, on or about October 27, 2008, October 5, 2009, May 14, 2011, and November 8, 2011, PYE did knowingly travel in foreign commerce with the purpose of engaging in illicit sexual conduct with a minor, in violation of Title 18, United States Code, Section 2423(b).

FURTHER YOUR AFFIANT SAYETH NOT.

Emily A. Shoupe
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me
this 24 day of February, 2017.

HONORABLE JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

11